## SAN JACINTO & SOUTHERN RAILWAY COMPANY v. ISOM McLIN.

### Decided June 21, 1901.

**1.—Contributory Negligence—Employe Riding on Lumber Train.**

Where plaintiff was an employe of a lumber company, and, desiring to go to its mills and get his pay, obtained proper permission to ride on a railway logging train owned and operated by the company, he was not guilty of con-tributory negligence in so going on the train, although he knew the cars were not built for the carrying of passengers, and that the track was not kept in the best condition.

**2.—Railway Company—Operation—Liability.**

A lumber company, for the purpose of getting logs to its mill, built a rail-road extending out seven miles, and in order to procure a division of freight rates with other railroads, they incorporated as a railroad company, the mem-bers of the lumber company being the sole incorporators of the railroad com-pany, but the lumber company operated the railroad, and no transfer of the road or rolling stock was ever made by it to the railroad corporation. Held, that the lack of such transfer and of actual control by the railroad corporation did not exempt it from liability as a railway corporation for personal injuries received by an employe of the lumber company while riding over the road,—such injuries resulting from the negligence of the train operatives and the bad condi-tion of the road.

Appeal from Montgomery. Tried below before Hon. L. B. Hightower.

*Jackson, Hightower & Rucks* and *C. W. Nugent,* for appellant.

*Sam A. Crawford,* for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought by Isom McLin, the appellee, against the appellant, the San Jacinto & Southern Rail-way Company, to recover damages for personal injuries alleged to have been suffered through the negligence of appellant. Appellant answered by general demurrer, general denial, and pleaded contributory negli-gence and assumed risk. A trial by jury resulted in a verdict and judgment for appellee, from which the railroad company has appealed.

The facts attending the accident which caused the injury to appellee are as follows: Appellee was an employe of the Campbell Lumber Company, a corporation operating a sawmill, and had been at work some distance from the mill. On the occasion in question plaintiff, by per-

mission of the foreman of the sawmill (who was also manager of the railroad), took passage on the train to go into the mill and receive his wages. He undertook to take passage on the rear car, but the brakeman objected, so he took a seat on what is termed by the witnesses the "reacher." The train was a logging train, constructed for no other purpose than the hauling of saw logs to the mill, and was drawn by what is known as a "shay engine." A "reacher" is a long heavy piece of timber used for the purpose of attaching the cars together and holding them far enough apart to admit of the operation of the train when loaded with logs which, on account of their length, extend over the ends of the cars. On the occasion in question all the cars were loaded with heavy sawlogs as high as they could piled, the logs being bound together with chains to keep them from rolling off. The evidence was conflicting as to whether the plaintiff was guilty of contributory negligence in riding on the "reacher." It was shown that if plaintiff rode at all, he either had to ride on the "reacher" or on top of the logs, and some of the witnesses testified that the place on top of the logs was more dangerous than the other, a fact which was probably demonstrated by this accident. We therefore find that the evidence sustains the conclusion that plaintiff was rightfully on the train and was not guilty of contributory negligence.

After the train had proceeded some distance from the point where plaintiff got on, and had attained a speed estimated by some of the witnesses at from thirty to thirty-five miles an hour, it was derailed. The logs on the car next to plaintiff were scattered and plaintiff injured as alleged. The wreck was due to the negligent failure of the defendant to keep the road in proper repair, and the negligence of the operatives of the train running the train at a high rate of speed.

Plaintiff was familiar with the condition of the road, and knew the cars were not built for the carrying of passengers. He also knew that it was operated exclusively for the benefit of the sawmill and had never been held out to the public as a carrier of either passengers or freight. As before stated, the Campbell Lumber Company was a corporation incorporated for the purpose of running a sawmill. Its stockholders were C. M. Campbell, J. I. Campbell, and Roy Campbell.

The three persons last named, for the purpose of securing a division of freight rates with other roads, as sole incorporators secured a charter from the State whereby "The San Jacinto & Southern Railway Company" was incorporated. The fact of their incorporation as a railroad company in the usual acceptation of that term can not be questioned in the present state of the pleading. The lumber company owned a tram road extending from their mill out seven miles in the direction of the town of Willis, Texas, and it was used exclusively for the purpose of supplying the mill with sawlogs. Its engines and cars were built and equipped for that purpose and no other, and it never was at any time held out to the public as a carrier of passengers or freight. This road

was known as the San Jacinto Southern Railroad and connected with the Gulf, Colorado & Santa Fe at San Jacinto.

Richards, the foreman of the said mill, was the manager of the road, and testified that he had reported to the railroad company the bad condition of the track and requested that it be repaired.

As a matter of fact the Campbells, who owned the mill and were also the incorporators of the road, had never transferred the title of the tram road and rolling stock to the San Jacinto Southern Railroad corporation, but continued to own the road and its equipment and to employ and pay the train operatives. The railroad company and the lumber company kept a separate set of books, and were separate and distinct corporations.

Without entering into a detailed discussion of the assignments of error assailing the action of the trial court in the manner of submitting the issues of negligence, contributory negligence, assumed risk, and measure of damages, we express the opinion that none of them can be sustained. The issues were fairly submitted to the jury, and the charge imposed on the company the duty of exercising only ordinary care for the safety of plaintiff while he was on the train. The most serious question presented is whether the proof authorized the trial court to assume as a fact that the defendant railway company occupied such a relation to the railroad in question, notwithstanding it had not been actually transferred to the railroad corporation, as to visit liability upon the corporation for the negligence of those operating the trains thereon. Upon this issue we are of opinion that the inevitable inference from the facts is that the railroad in question is the one that was incorporated, and that the one purpose of the incorporators had been subserved in that, by reason of its incorporation, its owners were enabled to demand and receive from other roads with which it connected a division of freights. Under this state of facts we think the incorporators can not shield themselves from liability because of their failure to comply with the law and operate its road in accordance with the terms of its charter. We think public policy would forbid that they be permitted to use their railroad charter for one purpose without incurring the liabilities which the law would impose if they had complied fully with its terms. We think, therefore, the court rightly assumed as a fact that the railroad company was liable for the accident in question, if negligence was shown on the part of the train operatives, and no fault was shown on the part of the plaintiff.

Inasmuch as the evidence supports the verdict, and no reversible error is shown, the judgment is in all things affirmed.

*Affirmed.*